Fourth case this morning, J.S.T. Corporation v. Foxconn. I'm joined here by my colleague Keith Scaliff for the appellant, J.S.T. Corporation. Specific jurisdiction has three essential requirements, each of which is satisfied with respect to these defendants in Illinois. First, and this will be the focus of my argument here, these defendants purposefully and persistently sell large volumes of infringing electrical connectors through Illinois dealerships, satisfying the purposeful direction requirement. Second, the injuries arise from the form-related contacts, as each of those infringing Illinois sales injures the trade secret owner, J.S.T. Counsel, I know you want to focus on purposeful availment, but my question bears on both. Is it your position then that if we have in this circuit adopted Justice Brennan's view of the broader stream of commerce test, that putting it into the stream of commerce is a sufficient minimum contact, that necessarily the defendant is subject to personal jurisdiction anywhere in which the product is sold, because the connection is there. The sale itself, which establishes the minimum contact, is also that the tort arises out of that. I would not necessarily read Justice Brennan's views that broadly. I think the requirement is to have a regular course or a regular flow of sales. So a single sale, a fortuitous sale, a sale that is not perhaps directly intended may not satisfy personal jurisdiction, but here we have a persistent regular course and regular flow of sales. We have intentional sales through an Illinois-specific or an Illinois-inclusive distribution network of which the defendants are well aware and they intend to profit from that. So if we agree with you on purposeful availment, then do you think it's an easy case on arising under? Yes, it is. Arising out of? Yes. The second element, Your Honor, actually might be the easiest one of all, because the injury here is a trade-secret misappropriation, and the injury arises, the injury occurs when a sale is made to a consumer. That is the injury here to JST, that's what completes the tort, and so that happens here in Illinois. It's the sales in Illinois that are the jurisdictional hook, and so that second prong is— Although you could have sought injunctive relief, right? Illinois permits you to seek injunctive relief as well as monetary damages for this misappropriation tort. So let's say that you find out that the trade-secret has been misappropriated and you seek injunctive relief to stop the sale. In that event, I don't see what the argument would be that there would be personal jurisdiction in Illinois. It would just be Michigan, right? The sales can be stopped. But you couldn't file that suit in Illinois. Yes, it can. It's the same tort. And you could file it in Illinois, and the Illinois court would do two things. First of all, it would probably follow the Supreme Court of Illinois' opinion in Russell and find that there is activity directed at Illinois. I'm positing here that they have the secret, but they haven't actually sold any goods that are now using your trade-secret. If they've appropriated the secret, but they've not put it to use, then there's no injury to anybody. And if they just make this for— They've put it in the products. They have the products. They're ready to go, but they're still housed at some warehouse somewhere. They haven't been sold in Illinois yet. So it's the same tort, right? The same misappropriation. But if you're seeking injunctive relief to prevent the sale, it can't be filed here. I don't see how it could be filed here under your theory. Well, if we know that these connectors are coming to Illinois, then for sure we could  If you know that— In Illinois? Yeah. If you have—Illinois courts will enjoin the sale of goods if the trade-secret is not itself readily obvious from the goods, and to protect the trade-secret, to protect its value, the Illinois courts will enjoin its sale. And we've cited cases that affect that. No, I get that they'll enjoin the sale. I'm just trying to figure out what your arising out of argument is if it hasn't actually been sold in Illinois yet. Okay. If you have goods coming to Illinois, I mean, you can certainly have an injunction against those goods if they're infringing goods under Illinois law. And that's—the injury is— But they haven't purposefully availed themselves of Illinois yet with respect to your tort. Okay. I'm talking about for the second prong, the arising out of prong. Well, I suppose, Your Honor, it's true. If nothing—if there are no sales in Illinois— Well, there have been sales, but not of the product that includes the allegedly misappropriated trade-secret. Okay. If sales have not included the misappropriated trade-secret in Illinois, then there's no— Then no. So it seems odd. I just think this is—I think this is a tricky case. And it seems odd that for the exact same misappropriation, you could seek injunctive relief—you could not seek, excuse me, injunctive relief in Illinois beforehand, right? But then you could seek damages afterwards. We would let the lower courts figure that out as we get into the ins and outs of Illinois trade-secret law. What we have here, though, is a case where goods have been sold. They're still sold today. You can go down the street into a Chevrolet— No, I understand that. But what we say—I'm trying to figure out—the implications of your theory are that if putting a product into the stream of commerce—and I agree, regular sales to a state that you can anticipate that it's going to hit Illinois, and let's say you can anticipate it's going to hit all 50 states—let's say that we agree with you that under our precedent, that suffices for the purposeful availment prong of the test. The implications of your argument are that then the defendant is subject to nationwide jurisdiction, which is a little bit of an odd result. And it's a little bit different than what would happen even in a products liability case, because in a products liability case, a defendant is only going to wind up being sued where accidents happen. Presumably, that doesn't open the defendant up in any individual suit to a suit in any of the 50 states. We are not saying that we can sue people in any of the 50 states. Our suit is based upon the fact that the connectors are sold in Illinois. That's why we're in Illinois. They're heading here. They're coming here. They've been here. They'll continue being here unless something is done. Right. But let's imagine the connectors are in every other 49 states as well. So you could sue in any of the 49 states. That is a function of GM's distribution network. Yes. So yes. That is not because of the theory, but that's because of the facts. We have here a defendant, a pair of defendants, who have chosen to sell through a very pervasive and large network. If we're dealing with, say, an exotic manufacturer who makes some type of car that's only sold in perhaps a few states, Illinois actually has pretty much all the exotics. But if we're talking about some other state that sees only the big brands, and they're selling electrical connectors for an obscure brand, then no, they could not be hauled into that state. But Nelson v. Park Industries is still the controlling case here, and it makes a lot of sense. There you had Woolworth's department stores. The people sold the shirts through their Woolworth's buyer to that distribution network, to that retail network, and so there was a Woolworth's in Wisconsin, and they were held to answer there. GM is perhaps— But there wasn't a rising under question. Sorry, I keep saying that because I'm used to thinking about jurisdiction. A rising out of question. You're focusing on purposeful availment. I'm saying let's say that we agree with you on purposeful availment. I think the hard part of this case, frankly, is the arising out of. The case arises out of the contacts with Illinois because we have a system of sending connectors to Illinois, and that is the case before the court, and that's what JSD sought to address. I'm sorry to say I'm well into my rebuttal time here, and if there are no further questions, I'd like to reserve my time for rebuttal. Thanks. Mr. Goldman? Thank you, Your Honors, and may it please the Court, Brian Goldman for the defendants. Judge Barrett, I agree that the central question here is the arising out of prong of the test, which is the ground on which the district court ruled, and the district court correctly held that there is no specific jurisdiction here because all of defendants' allegedly misappropriating conduct occurred outside of Illinois, and specific jurisdiction has to rest on a defendant's conduct in the forum state, which is what the Supreme Court has held most recently in Walden and Bristol-Myers Squibb. This is different than Walden, right? So this is a hard case because the sale matters, right? So the trade secret is misappropriated, let's say, and is in the product, which is then sold here, and so it's a little bit different than Walden where the cash is seized at the airport, but the injury or the effects of the injury are just felt elsewhere. So Your Honor said the sale matters, and I think it's really important to be precise about which sale matters, because the way JST has articulated its injury at page 3 and 28 of its opening brief, and this echoes what's in its complaint at paragraphs 93 and 94, is that it's the sale from defendants to Bosch that is the injury, because that is where instead of JST serving as the supplier to Bosch, the defendants are serving as the supplier to Bosch, and JST says, we were displaced from getting those contracts. So that is the moment at which the tort it has alleged has been completed. The elements, this is necessarily a tort-by-tort determination of what the relevant conduct is, and then you look at where that occurred, but so if the elements here are the acquisition, disclosure, and use of a trade secret by a party who knows it's a trade secret in a way that causes damage. What's the use under that theory? Is the use when it incorporates it into the product, as opposed to the sale? So I think both could fit within the definition of use. I think this becomes an even easier case for us if the use is simply the design and manufacture of the product incorporating this trade secret. There's some suggestion and some of the restatements and the like that even marketing and sale of a good incorporating a trade secret could still count as a use, and we're not fighting that here simply because we don't need to on the facts because defendant's sale is the sale to Bosch, and so even that is complete outside of the forum. And anything that happens downstream from there is not relevant to this tort as it's been alleged, and that's indistinct from Matlin or Real Action Paintball or Ariel Investments, this court's recent cases, applying Walden and the other more recent Supreme Court cases. What about patent infringement? Is a defendant subject to specific jurisdiction in every jurisdiction in which the defendant has sold a good that infringes the patent? So where the defendant has sold an infringing good itself, then that is an act of infringement and it would be subject to jurisdiction. So I think the MEMC case from the Federal Circuit that we cite in our brief is a really good illustration of that because it shows what the limit of that doctrine is. So there was a manufacturer outside the U.S. who sold to Samsung Japan knowing that Samsung Japan was then going to resell to Samsung in Austin, Texas, and what the Federal Circuit said is that you can't argue that sale to Samsung Japan is just a mere conduit to reach Texas. It doesn't matter that you know that this is going to reach Texas. Your act of infringement is one sale and that was a sale that happened in Japan outside the United States, and so that wasn't an actionable claim for infringement. But there was a separate claim in that case, and I think this provides a really helpful counterpoint. There was a separate claim for contributory infringement, which was the type of infringement also at issue in the Honeywell case that JST has relied on there, and you get a different result there because the elements of that claim are different. But when you're talking about contributory infringement, it's not the defendant's own infringing conduct that matters. That tort, if we conceive of it as a tort, isn't complete until some downstream party has infringed the patent. And so in MEMC, what the Federal Circuit said is there is a domestic act of contributory infringement because the defendant had been in communication with Samsung Texas, and so that disparity in the outcomes there just tracks the fact that the result is always going to vary with the tort. And when you're dealing with this Illinois misappropriation tort, it matters that that tort is complete no later than the moment of the sale to Bosch. And that's before anything even enters the stream of commerce, which is why the district court correctly held that it wasn't necessary to determine whether the stream of commerce test could be satisfied, whether the Justice Brennan or the Justice O'Connor view would apply there, because that would all be further downstream than when the act is complete. Do you think the court's recent cert grant on the question of causation, or how close of a connection it has to be related to arising out of, has any bearing on this case? I don't think it does directly, Your Honor. We certainly have no objection if the court wants to wait to see what the Supreme Court there does, but that's a question involving an even more specific application of the arising out of prong, where the court's essentially looking to say, is it even enough to say that your claim involves Ford selling cars in Montana when this particular vehicle was not sold in Montana? Or does there have to be some tighter but-for or proximate cause connection to say that this injury arose out of that precise car sale? Our view here is that there are simply no sales at all on the part of defendants in Illinois that's undisputed, and JST is now trying to characterize GM's sales as defendant's sales, but it's, again, the injury that's been alleged is the sale to Bosch, and that's the only direct conduct that the defendants are engaged in. So you think that for purposes of your position, even if we found the purposeful possible for there not to be specific jurisdiction because of the arising out of prong? Yes, absolutely. And that's exactly what Judge Kendall said. She put it more in terms of, we don't need to determine the purposeful availment at stream of commerce aspect of the inquiry because, I don't know that she said even assuming, but essentially even assuming that to be true, the relevant conduct here all occurs outside of Illinois, and I think that would be a proper way to dispose of this case. And, you know, I think the reason that the purposeful availment inquiry seems so tricky is because there isn't this nexus in the first place. The fact that this claim does not arise out of Illinois conduct is what makes it kind of hard to even conceptualize how this maps onto the sort of classic type of products liability case where the injury does not arise until the end of the designation because the tort is traveling with the product in a products liability case. And again, that's the distinction that the Illinois Supreme Court drew in green when it distinguished gray. This court then adopted that same distinction in the Young case, and so this principle has existed for decades in holding that a products liability claim is necessarily going to be broader in terms of its potential scope because of where down the stream the relevant act occurs. When you're dealing with an intentional tort that is complete much earlier in the process, like breach of fiduciary duty in Young and in Green, or the type of claim that you have here or in Matlin, then it's going to be a narrower set of conduct that you look to to determine where that relevant location is. And that's where we rely on Walden, just because I think that's a good illustration. There are some intentional torts that just involve very narrow, discrete acts. So a federal agent unlawfully seizing funds, that happens in one place, and so that agent can be sued where that tort occurred or if the agent lives in a different state, then perhaps where that agent lives. But that's it, and that's simply a function of the elements of that tort being a much narrower one. If the court has no further questions, we ask that you affirm. Thank you, counsel. Very briefly, Your Honor, just one minute for Defendant T.E. Connectivity. T.E. Connectivity is aligned with and adopts the points that were addressed by Defendant Foxconn's counsel. This T.E. Connectivity just reserved one minute to cover the off chance that appellant would address T.E. Connectivity's facts. But be that as it may, Your Honor, really to the heart of it, what appellant is asking for is universal jurisdiction in all states over a defendant, just because the plaintiff resides in Illinois. The court has addressed this. My colleagues have already spoken to a couple of the cases. In addition, there's Matlin, and even instructive, although not binding on this court, is the hexacomb and barrier northern district Illinois cases as well. Thank you, Your Honor. With that respect, we rely upon our appellee brief for other issues, and defendants respectfully request that the plaintiff's complaint for lack of personal jurisdiction be dismissed in accordance with district court. Thank you. Your Honors, Walden actually supports JST's position here because Walden specifically made an exception for the stream of commerce theory. It stated that entering a state through goods or an agent would be considered to be enough contact. But with respect to Judge Barrett's position on the second requirement and counsel's argument about MEMC in the federal circuit, that's actually not as straightforward a case for the appellees as they might like to believe. There's a discussion in MEMC of how the federal circuit distinguished that which appears to be the leading federal circuit case. Beverly Hills Fan, of course, concerned somebody who placed a fan in the stream of commerce, and there was a patent infringement that went down the chain through various states into Virginia. MEMC focused on whether mere foreseeability of resale would be enough to show that there was contact. And the court, of course, held that it was not. It was not necessarily foreseeable that the second person down the food chain with these silicone wafers, I believe, that were eventually heading to Austin, Texas, whether they would actually get there because it was an independent decision maker in the middle of that stream of commerce who could choose to send them there. Maybe, maybe not. But here we have a Beverly Hills Fan type of case, and the federal circuit stated the distinction was that we would look to see where the interests of the manufacturer really lie. And the interests of the manufacturer in this type of case, in the Beverly Hills Fan case, lie with the consumer sale. What we have here essentially is an argument which is difficult to accept, which is that a manufacturer of a component loses all interest and has only an attenuated concern at best with what happens down the line with its component. That is simply not the economic reality. At least as far back as Honeywell, this court has always been concerned with economic reality. And in Honeywell, we had a situation. Honeywell was a different, it was patent infringement, and Honeywell also preceded Walden. That's right. But more recently, we have a case where a patent infringement, but a case of sale. In the Donnelly case in Michigan, where you had car mirrors that were made in Germany, installed and delivered to Mercedes in Germany for the construction of cars in Germany, yet there was jurisdiction in the United States, in Michigan, because the component maker was targeting the Mercedes network in the United States, and therefore they were responsible for those sales. Again, that court, again, looked to the economic reality of how it is in our economy the component manufacturers function. The only reason that we're here is because these connectors have value, and the only reason these connectors have value is because consumers buy the GM cars. This is not a case where the defendants wash their hands of everything and don't care whether Bosch puts these connectors on its Christmas tree or puts them in a landfill. The value of these contracts is that they work in cars and that they work well enough that more are purchased and more are ordered, and there's a continuing relationship. If the connectors didn't function, and if for some reason they could not be made to work in the GM cars, then these contracts would have no value. And the fact is that the injury here does arise from those Illinois sales. That's where the benefit of the contract is. It's an Illinois sales. Unless there are any further questions, Your Honors, I would rest. Thank you. Thanks to both counsel. The case will be taken under advisement.